MURPHY, Circuit Judge,
concurring.
I concur in the judgment and, with the exception of footnote 5, the opinion.
Footnote 5 discusses the legal issues raised by an employer’s attempt to distinguish between solicitations on facially “neutral, non-section 7-based” grounds, such as Price Chopper’s asserted distinction between solicitations of employees and of customers. In text, however, the majority correctly observes that in this case “the evidence does not support the existence of any coherent or consistent distinction” between solicitations of employees and of customers and that “Price Chopper presented no evidence that there was any other neutral, non-discriminatory reason for adopting [its] new unwritten policy prohibiting solicitations of off-duty employees ... outside its stores.” Majority Op. at 184. As a consequence, this panel need not address the hypothetical question of whether that or any other purportedly neutral distinction would violate the NLRA. Complex legal and policy issues inhere in that hypothetical question, the resolution of which Congress and the Supreme Court have entrusted in the first instance to the Board. See, e.g., Hudgens v. NLRB, 424 U.S. 507, 522, 96 S.Ct. 1029, 47 L.Ed.2d 196 (1976). This court, then, should only address the question when it becomes real and has first been addressed by the Board. At that point, this court would be bound to defer to any permissible construction of the NLRA by the Board. See Holly Farms Corp. v. NLRB, 517 U.S. 392, 398-99, 409, 116 S.Ct. 1396, 134 L.Ed.2d 593 (1996).
Footnote 5, moreover, does not even discuss the purportedly neutral distinction asserted by Price Chopper in this case, i.e., a distinction between target audiences. Rather, it analogizes to cases distinguishing between types of solicitations. See Guardian Indus. v. NLRB, 49 F.3d 317, 321-22 (7th Cir.1995); Riesbeck Food Mkts., Inc. v. NLRB, Nos. 95-1766, -1917, 91 F.3d 132, 1996 WL 405224, at *3-*4 (4th Cir. July 19, 1996) (unpublished disposition). In so doing, footnote 5 cannot even be treated as obiter reflecting favorably upon those cases.
Certainly footnote 5 should not be read as an endorsement, albeit in dicta, of the unpublished Riesbeck decision.[7] This panel has not had the benefit of a Board ruling or advocacy on the charitable solicitation issues there presented. Furthermore, Riesbeck involved informational solicitation, while this case involves organizational solicitation. Caselaw establishes a hierarchy of activities under section 7, and nonorganizational activity by nonemployees, like that in Riesbeck, merits the least protection. See, e.g., United Food & Commercial Workers v. NLRB, 74 F.3d 292, 298 (D.C.Cir.1996); NLRB v. Great Scot, Inc., 39 F.3d 678, 682 (6th Cir.1994). This distinction has been critical to other courts. In a 1996 case involving nonorgani-zational solicitation, the Sixth Circuit published an opinion similar to Riesbeck. See Cleveland Real Estate Partners v. NLRB, 95 F.3d 457, 464-65 (6th Cir.1996). Both the Sixth Circuit, in a later holding, and the Fourth Circuit, in dicta, have since indicated that Cleveland Real Estate Partners is limited to nonemployee, nonorganizational cases. See Meijer, Inc. v. NLRB, 130 F.3d 1209, 1212-13 & n. 4 (6th Cir.1997); Be-Lo Stores v. NLRB, 126 F.3d 268, 284 (4th Cir.1997).

. In the other case cited in footnote 5, the Seventh Circuit simply rejected the Board's inference of union animus from the specific facts presented. See Guardian Indus. v. NLRB, 49 F.3d 317, 319-22 (7th Cir.1995).